**Patricia BAKER, et vir, Appellants,**

v.

**WAL–MART STORES, INC., Appellee.**

**No. 09–86–145 CV.**

Court of Appeals of Texas,
Beaumont.

Feb. 19, 1987.

Carl Waldman, Waldman, Smallwood & Grossman, Beaumont, for appellants.

Howard L. Close, Orgain, Bell & Tucker, Beaumont, for appellee.

## OPINION

PER CURIAM.

Appeal from an Order Denying New Trial. The original Motion for New Trial was based principally on jury misconduct.

The Appellants brought a negligence action against the Appellee for personal injuries resulting from Patricia Baker's fall from a stock ladder on the Wal-Mart premises. In a juried proceeding, the jury found that Wal-Mart Stores, Inc., was 40% negligent and also found that contributory negligence, on the part of Patricia Baker, amounted to 60%.

In the original Motion, the Appellants' main thrust is that an outside influence came to bear upon the jury's decision. This alleged "outside" influence was in the form of alleged expert opinion or testimony given by one of the jurors. She was a registered nurse. Her statements were made in the jury deliberation room during the deliberations. The Appellants argue that these alleged outside influences had a material effect on the outcome of the case.

Vickey Dalton was a juror and a registered nurse. Her profession was made known to the other members of the jury. Appellants, in their brief, argued:

"Jury misconduct occurred when the jurors received her expert medical testimony outside the court room and while in jury deliberations relating to the potential side effects of medication being taken by appellant. While the jury was deliberating the issue of liability, remarks were made concerning the medication appellant was taking at the time of the incident at Wal-Mart Stores, Inc. Mrs. Dalton informed the jury that these particular medicines could have caused appellant to become drowsy or dizzy, thus causing her to fall from the ladder."

Two other jurors, Oliver Mitchell and Steve Strahan, believed that such comments made by Dalton may have influenced the jury's decision.

We have carefully considered the affidavits of Oliver Mitchell and Steve Strahan. From the affidavit of Mitchell, we find:

"The remarks made *during deliberation,* one of which I feel, *may have some bearing* ... I made the statement that Emprin and Motrin would not effect her in a way to cause her to fall off the ladder. One of the other jurors (Nurse) said that these drugs effect different people different ways. She then added that these medicines could have caused Mrs. Baker to become drowsy or dizzy, thus causing her to fall off the ladder. I believe that several of the *jurors may have* [been] influenced by these remarks." (Emphasis ours)

We perceive that the affidavit does not have a strong thrust; its language is weak. But the affidavit clearly shows that the remarks of the nurse were made during deliberations and that this nurse was "one of the other jurors".

The affidavit of Strahan has a somewhat different tenor. Part of it reads:

"During the delibrations [sic] the nurse made a statement in which she said that shingles were very painful and it would be extremely unconfortable [sic] to climb an [sic] reach, she also made statements about the drugs Mrs. Baker *may have been on* would make her drowsy are [sic] become *off* balance very easily. I think that her statements had an influence on the jury to Wal-Marts [sic] advantage...." (Emphasis ours)

Nevertheless, Strahan's affidavit shows, unequivocally, that the statements were made during deliberations.

*TEX.R.CIV.P. 327b* reads as follows:

"A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, *except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.*" (Emphasis added)

Moreover, *TEX.R.EVID. 606(b)* states:

"*Inquiry into validity of verdict or indictment.*

"Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind* or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any *outside influence* was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes." (Emphasis added)

■ We conclude that these two rules, *327b* and *606(b)*, determine the issue adversely to Appellants. These rules certainly worked a meaningful change from the prior Texas law. Under the prior rules, it was not permissible to elicit testimony concerning the jurors' mental processes at arriving at the verdict, but the old rules did permit testimony as to certain overt acts or misconduct occurring during the jury's deliberations which involved discussions of matters that were not in the record before the jury. We hold that the exception, under *TEX.R.CIV.P. 327b*, does not apply to juror Vickey Dalton's assertions. The exception:

"[E]xcept that a juror may testify whether *any outside influence* was improperly brought to bear upon any juror." (Emphasis ours)

The affidavits of Mitchell and Strahan show "inside influence".

■ Furthermore, the affidavits of Mitchell and Strahan, we conclude, could not be considered upon an inquiry into the validity of the verdict because of the plain, affirmative language of *TEX.R.EVID. 606(b)*. These two affidavits clearly allege an inside influence—not an "outside" one. We overrule Appellants' Point of Error One.

■ We hold that the Appellants simply did not timely file their Amended Motion for New Trial. The court signed the judgment on April 9, 1986. The Appellants filed their original Motion for New Trial on April 28, 1986, timely, being within 30 days after the judgment was signed. *TEX.R. CIV.P. 329b(b)*.

Appellants filed an Amended Motion for New Trial on May 15, 1986, which brought forward several new grounds for a new trial.

*TEX.R.CIV.P. 329b(b)* provides:

"(b) One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is signed."

Under the clear language of this rule, we feel definitely constrained to hold that since the Appellants' Amended Motion for New Trial was filed more than 30 days after the signing of the Judgment on April 9, 1986, we are not empowered to consider Points of Error Two, Three and Four. All

the Points of Error, therefore, are over-ruled and the judgment below is affirmed.

 We, of course, do not pass upon the justice, wisdom or efficacy of the rules. Trial judges of lengthy experience have observed that, with some juries, a spirit of fraternity and camaraderie exists. This is more probable in cases where the jury sits for several weeks. With those juries, a member may have much more influence over the verdict than any "outside influence". This type of influence can bring about an injustice. Admittedly, there are other juries that do not develop such a spirit of fraternity or camaraderie. But the rule-making power is lodged in the Supreme Court—not in the intermediate Court of Appeals. In any case, we feel that the trial judge is in a much superior position to determine whether improper influence—either outside or inside—affected the validity of the jury's verdict.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. I fully recognize that the majority's holding that the evidence injected by the juror was not an "outside influence" is supported by *Robinson Elec. Supply v. Cadillac Cable Corp.*, 706 S.W.2d 130 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Clancy v. Zale Corp.*, 705 S.W.2d 820 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) and *Daniels v. Melton Truck Lines, Inc.*, 704 S.W.2d 142 (Tex.App.—Eastland 1986, writ ref'd n.r.e.). Nevertheless, I refer to the concurring opinion of Justice Draughn in *Robinson, supra* at 133. He very ably points out the defects in adopting such a narrow construction of "outside influence."

The efforts of competent lawyers and judges to seat a jury with no preconceived ideas about a case and have it consider only evidence allowed under the rules are rendered meaningless when appellate courts allow jurors to inject other evidence during the deliberations. This deprives the litigants of a fair trial and makes a mockery of the trial judge's instructions. There-

fore, I would reverse and remand for a new trial.